UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | | |
|---|---|---|
| JAEKOON CHOI, MIN SEOK PARK, and ROBERT LIM, on behalf of themselves and all others similarly situated, | : : : : | **24 Civ. 1067** |
| Plaintiffs, | : : | |
| -against- | : : | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| 32 BUNGA INC. d/b/a JONGRO BBQ, 32 BUNGA 2 INC. d/b/a JONGRO GOPCHANG, and KYUNG RIM CHOI, | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

------------------------------------------------------------------X

Jaekoon Choi, Min Seok Park, and Robert Lim (collectively, "Plaintiffs"), on behalf of themselves and all others similar similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants 32 Bunga Inc. d/b/a Jongro BBQ, 32 Bunga 2 Inc. d/b/a Jongro Gopchang, and Kyung Rim Choi (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.     Plaintiffs were servers at Jongro BBQ and Jongro Gopchang (collectively, "Jongro"), high-end Korean restaurants operating as a single integrated enterprise in Manhattan's Koreatown.  Throughout their employment at Jongro, Defendants paid servers and bussers, including Plaintiffs, the "tipped" minimum wage rate without satisfying the strict tip credit requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Specifically, Defendants failed to provide servers with proper notice of the tip credit while also unlawfully including managers in the tip the pool.  Defendants also shaved time from servers and bussers who worked over forty hours in a week to reduce their total hours worked.  As a result, Defendants failed to pay these servers and bussers at least one and one-half times the statutory minimum wage rate for all hours worked over forty per workweek.  Lastly, Defendants failed to pay

servers spread-of-hours pay, in violation of the NYLL, and failed to provide servers with wage notices when hired and accurate weekly wage statements, in violation of the NYLL's Wage Theft Prevention Act ("WTPA").

2.      Plaintiffs bring this action on behalf of themselves and all similarly situated servers and bussers (collectively, the "Waitstaff") pursuant to the FLSA, the NYLL, and the WTPA seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover unpaid minimum and overtime wages, spread-of-hours pay, misappropriated gratuities, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred at Jongro BBQ and Jongro Gopchang, which are both located in the Southern District of New York.

## THE PARTIES

**Plaintiff Jaekoon Choi**

5.      Jaekoon Choi resides in Hudson County, New Jersey.

6.      Chui worked as a server at Jongro (*i.e.*, both locations) from approximately December 2014 to March 2020 and then again from January 2022 through January 6, 2024.

**Plaintiff Min Seok Park**

7.      Min Seok Park resides in Bergen County, New Jersey.

2

8.      Park worked as a Server at Jongro (*i.e.*, both locations) from approximately February 1, 2017, to March 2020 and then again from July 2020 through October 11, 2023.

**Plaintiff Robert Lim**

9.      Robert Lim resides in Hudson County, New Jersey.

10.      Lim worked as a server at Jongro (*i.e.*, both locations) from approximately August 2015 to March 2020, September to November 2021, and April 2023 through January 14, 2024.

**Defendant 32 Bunga Inc.**

11.      Defendant 32 Bunga Inc. is a New York Corporation that owns, operates, and does business as Jongro BBQ, a Korean restaurant located at 22 West 32nd Street, 2nd Floor, New York, New York 10001.

12.      32 Bunga Inc. was and still is a covered employer within the meaning of the FLSA and NYLL that, throughout Plaintiffs' employment, employed Plaintiffs and similarly situated Waitstaff by, for example, hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

13.      32 Bunga Inc. applies the same employment policies, practices, and procedures to all Waitstaff in its operation, including practices concerning their hourly compensation, gratuities disbursement, and job site procedures.

14.      32 Bunga Inc. has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Defendant 32 Bunga 2 Inc.

**Defendant 32 Bunga 2 Inc.**

15.    Defendant 32 Bunga 2 Inc. is a New York Corporation that owns, operates, and does business as Jongro Gopchang, a Korean restaurant located at 22 West 32nd Street, 5th Floor, New York, New York 10001.

16.    32 Bunga 2 Inc. was and still is a covered employer within the meaning of the FLSA and NYLL that, throughout Plaintiffs' employment, employed Plaintiffs and similarly situated Waitstaff by, for example, hiring, firing, and disciplining them, directing their work duties, issuing and maintaining payroll and time records, and setting other employment practices and their terms of employment.

17.    32 Bunga 2 Inc. applies the same employment policies, practices, and procedures to all Waitstaff in its operation, including practices concerning their hourly compensation, gratuities disbursement, and job site procedures.

18.    32 Bunga 2 Inc. has had an annual gross volume of sales in excess of $500,000 in the three years before the filing of this Complaint, both individually and as a single integrated enterprise with Defendant 32 Bunga Inc.

**Defendant Kyung Rim Choi**

19.    Upon information and belief, Defendant Kyung Rim Choi is an owner and principal of 32 Bunga Inc. d/b/a Jongro BBQ and 32 Bunga 2 Inc. d/b/a Jongro Gopchang.

20.    Throughout Plaintiffs' employment, Kyung Rim Choi held power and authority over personnel decisions at Jongro, including the power to discipline, hire, and fire employees, set their schedules and wage rates, retain time and/or wage records, and otherwise control their terms and conditions of employment.

21.    For example, Defendant Kyung Rim Choi would meet with Jongro Managers on a weekly basis to review and supervise the operation of both restaurants,

including discussions on menu items, the hiring of staff, pay practices, and the performance of managers.

22.    For example, Defendant Kyung Rim Choi hired Jaehun Kim as a server in in December 2023.  A general manager at Jongro had previously denied Jaehun Kim employment in December 2023, stating the restaurant did not need any more servers. Kyung Rim Choi overruled the general manager's decision and hired Jaehun Kim.

23.    For example, in 2014, Kyung Rim Choi decided that "captains" at Jongro be paid an additional dollar above the tipped minimum wage rate.

24.    For example, Defendant Kyung Rim Choi instructed Jongro's previous general manager, David Oh, to participate in the restaurants' tip pools to supplement his wages.

25.    For example, Defendant Kyung Rim Choi fired general manager David Oh in October 2023 and hired Seung Hoon Lee as his replacement.

26.    Rim Choi exercised sufficient control over Jongro's operations and Plaintiffs' employment to be considered their employer under the FLSA and NYLL.

**The Jongro Entities Are a Single Integrated Enterprise and Joint Employer**

27.    Since the formation of 32 Bunga 2 Inc. in January 2018, both Jongro entities have shared their primary location, 22 West 32nd Street, New York, New York 10001.  32 Bunga Inc. operates the second floor of the building while 32 Bunga 2 Inc. operates the fifth floor, which it took over from 32 Bunga Inc. after its formation.

28.    Throughout Plaintiffs' employment periods, the Jongro entities have had unified operations in the same location using the same staff and record keeping systems.

29.    For example, Waitstaff working at either Jongro restaurant share the same unified tip pool.

30.    Seung Hoon Lee acted as General Manager for both the second and fifth floor restaurants and directed employees on both floors.

31.    Waitstaff and managers employed by Jongro are assigned to work on both the second and fifth floor in the same week, and sometimes during the same shift.  For example, on January 14, 2024, Plaintiff Lim started his shift on the second floor before finishing his shift on the fifth floor for the evening rush.  Plaintiff Lim used the same uniform when working on both floors and received all his hourly earnings on the same check issued by 32 Bunga Inc. for that day.

32.    Waitstaff alternated between the two floors during the same shifts but did not clock out before switching floors.  Waitstaff would use the same "punch in" number on the second and fifth floors to start and end their shifts, with all hours worked on either floor paid in the same weekly check.

33.    Beyond sharing staff and record keeping systems, both Jongro entities publicly display their unified operation by having Waitstaff wear the same uniforms on both floors and by sharing the same owner, Defendant Kyung Rim Choi.

34.    For example, Jongro Gopchang states on its website that it is "[a] part of the Jongro BBQ family" that offers the Gopchang specialty of "grilled beef or pork intestines."  *See* https://www.jongrogopchang.com/ (Last accessed Feb. 6, 2024).

35.    The Jongro entities are a single integrated enterprise that, for purposes of the FLSA and NYLL, cumulatively had an annual gross volume of sales in excess of $500,000 in each of the three years before the filing of this Complaint.

36.    In addition to operating as a single integrated enterprise, the Jongro entities share and codetermine the essential terms and conditions of the employment of Waitstaff, including Plaintiffs, and exercise sufficient control over them to be considered their "employers" under the FLSA and NYLL.

37.    Under the FLSA, an employer "include[s] any person acting, directly and indirectly, in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

38.    Under the FLSA, multiple "employers" may qualify as a "joint employer." The economic reality of Defendants' relationship with the Waitstaff mandates that the Jongro entities be treated as joint employers.

39.    Operating as joint employers, Defendants engaged in a scheme to deprive Waitstaff, including Plaintiffs, of the benefits and wages required by the FLSA and the NYLL, as is explained below.

## FACTUAL ALLEGATIONS

40.    Defendants failed to pay Waitstaff, including Plaintiffs, "spread-of-hours" pay of one extra hour paid at the statutory minimum wage rate whenever their workdays started and ended more than ten hours apart.

41.    Defendants directed Jongro managers to "shave" or reduce the Waitstaff's hours worked to keep their weekly hourly totals below or close to forty per workweek. Jongro managers typically accomplished this by extending the length of employees' breaks on Jongro's time keeping system.

42.    Defendants failed to furnish Waitstaff, including Plaintiffs, with a wage notice upon hiring or when their rates of pay changed reflecting their minimum and overtime wage rates or the tip credit Defendants were claiming.  For example, all three Plaintiffs left their employment with Jongro in March 2020 due to COVID-19 related closures.  Defendants rehired them several months later.  Despite this, Jongro failed to issue Plaintiffs new tip credit and wage notices at the time of each rehiring.

43.    Defendants failed to furnish Waitstaff, including Plaintiffs, with wage statements with each payment of their wages throughout their respective employment

periods accurately reflecting their minimum and overtime wage rates and total hours worked.

44.    Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond mere technical errors or omissions.

45.    The damages Waitstaff, including Plaintiffs, suffered because of the underpayment of their wages are directly traceable to Defendants' overt and intentional failure to comply with the WTPA's wage notice and wage statement requirements.

46.    Defendants deprived Waitstaff, including Plaintiffs, of wage notices and wage statements in their entirety to conceal the total number of hours that they worked per workweek as part of Defendants' practice of unlawfully reducing the Waitstaffs' hours worked per workweek and avoid paying them all of their overtime wages due.

47.    Defendants' failure to comply with the WTPA, along with their intentional manipulation of weekly hour totals, was part of a scheme that intended to, and actually did, deprive Waitstaff, including Plaintiffs, of the ability to know if they were being paid correctly and, if not, exactly how much compensation they were entitled to, and led to the underpayment of wages that Plaintiffs allege in this Complaint.

48.    Defendants further failed to provide Plaintiffs and other Waitstaff with adequate notice indicating they would be applying any sort of credit to justify paying them wages below the applicable minimum wage rate.

49.    Defendants also created an unlawful tip pool by allowing Jongro managers to receive a share of the Waitstaff's tips.  For example, for the workweek of October 30 to November 5, 2023, managers Woo Lee and Jee Hyo Choo received $350 each from the tip pool.  Managers Woo Lee and Jee Hyo Choo each had the ability to make schedules, hire and fire Waitstaff, and were primarily responsible for overseeing and directing the work

duties of Waitstaff.  Plaintiffs all worked during this week, and as a result, had their individual tip shares reduced as a result of the managers' inclusion.

50.    Despite these practices, Defendants paid Waitstaff, including Plaintiffs, below the applicable minimum hourly rate under the pretext of applying a tip credit.

**Plaintiff Jaekoon Choi's Wages Paid and Hours Worked**

51.    Throughout his employment periods, Choi worked at both Jongro locations under Defendants' direction and control.  For example, in the workweek of October 9 to 15, 2023, Choi worked on both the second and fifth floors.

52.    From June 2017 to March 2020, Choi typically worked between fifty-four (54) and sixty-three (63) hours per workweek.

53.    During this period, Choi typically worked six days per workweek, ten hours per day with an hour-long lunch break.  However, Defendants would often require Choi to work an additional day in the workweek when the restaurants were busy, especially during the holiday season.

54.    Choi did not work at Jongro from approximately March 2020 to January 2022 because of COVID-19 related closures.

55.    From approximately January 2022 until the end of his employment, Choi typically worked between forty (40) and forty-two (42) hours per workweek.

56.    During this period, Choi typically worked five days per workweek, nine hours per day with an hour-long lunch break.  However, at least once every two weeks, he would work an additional hour or two on different days when the restaurants were busy.

57.    From 2017 until the end of his employment, Defendants paid Choi a dollar above the applicable tipped employee minimum wage rate.

58.    Prior to March 2020, Defendants paid Choi at his regular hourly rate for all hours worked, including those over forty in a work week.

**Plaintiff Min Seok Park's Wages Paid and Hours Worked**

59.    Throughout his employment, Park worked at both Jongro locations under Defendants' direction and control.  For example, Park typically worked both floors on Tuesdays, starting on the fifth floor and ending his shift on the second floor.

60.    From approximately June through October 2017, Park typically worked approximately thirty-three (33) hours per workweek.

61.    During this period, Park typically worked four days per workweek, Tuesday from approximately 6:00 p.m. to 12:00 a.m. and Wednesday to Friday from approximately 5:00 p.m. to 3:00 a.m., with an hour-long lunch break per workday.

62.    From approximately November 2017 to November 2018, Park typically worked approximately forty-five (45) hours per workweek.

63.    During this period, Park typically worked Tuesday to Saturday from approximately 11:30 a.m. to 9:30 p.m. and Sunday from approximately 10:00 a.m. to 8:00 p.m., with an hour-long lunch break per workday.

64.    From approximately November 2018 to March 2020, Park typically worked approximately forty-two (42) hours per workweek.

65.    During this period, Park typically worked Tuesday, Wednesday, and Saturday from 11:30 a.m. to 9:30 p.m., Thursday from 10:00 a.m. to 4:00 p.m., and Sunday from 10:00 a.m. to 8:00 p.m., with an hour-long lunch break per workday except Sunday.

66.    Park did not work for Defendants from approximately March through June 2020 because of COVID-19 related closures.

67.    Defendants rehired Park to work for Jongro in July 2020.

68.     From approximately July 2020 until the end of his employment with Defendants, Park worked between forty (40) and forty-two (42) hours per workweek across five days per workweek with varying schedules.

69.     From approximately April 2017 until the end of both of his employment periods, Defendants paid Park a dollar above the applicable tipped employee minimum wage rate.

70.     Before to March 2020, Defendants paid Park at his regular hourly rate for all hours worked, including those over forty in a work week.

71.     After his return to Jongro in July 2020, Defendants typically did not pay Park for any hours worked over forty per workweek.

**Plaintiff Robert Lim's Wages Paid and Hours Worked**

72.     Throughout his employment, Lim worked at both Jongro locations under Defendants' direction and control.  For example, for the workweek of January 8 to 14, 2024, Lim worked on both the second and fifth floors.

73.     From approximately June 2017 to March 2020, Lim typically worked approximately forty-five (45) to sixty-three (63) hours per workweek.

74.     During this period, Lim typically worked five ten-hour days per workweek, with an hour-long lunch break per workday.  However, Defendants would often require Lim to work seven ten-hour days per workweek when the restaurants were busy, especially during the holiday season.

75.     Lim stopped working for Defendants from approximately March 2020 through August 2021 following COVID-19 related closures.  Lim also did not work for Defendants from approximately November 2021 to April 2023.

76.     During his two subsequent employment periods, from approximately September to November 2021 and from April 2023 to January 14, 2024, Lim typically

worked between thirty-two (32) and forty (40) hours per workweek across four or five daily shifts that were nine hours long, with an hour-long lunch break per workday.

77.    Throughout his employment periods, Defendants paid Lim at the tipped employee minimum wage rate.

78.    Prior to March 2020, Defendants paid Lim at his regular hourly rate for all hours worked, including those over forty in a work week.

## COLLECTIVE ACTION ALLEGATIONS

79.    Plaintiffs bring the claims in this Complaint arising under the FLSA on behalf of themselves and similarly situated persons who are current and/or former Waitstaff of Defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

80.    The FLSA Collective consists of at least fifty Waitstaff who have been victims of Defendants' common policies and practices that violated their rights under the FLSA by willfully deducting hours worked over forty per workweek, which denied them overtime wages due, and unlawfully misappropriating portions of their tips.

81.    The FLSA Collective consists of persons who, during their employment with Defendants, worked as servers and bussers (*i.e.*, the Waitstaff) and fell into the category of non-exempt, non-managerial tipped employees who customarily and regularly earned more than $30 per month in tips.

82.    As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA.  This policy and pattern or practice includes failing to pay the FLSA Collective members at the applicable overtime wage rate for hours worked over forty per workweek and unlawfully keeping portions of their tips.

83. Defendants were not entitled to take a tip credit against Plaintiffs' and the FLSA Collective's wages. With respect to the FLSA's requirements:

> The FLSA . . . allows an employer to pay "tipped employees" an hourly rate less than the federal minimum wage by crediting a portion of the actual amount of tips received by the employee against the required hourly minimum wage. An employer may not avail itself of the tip credit if it requires employees to share their tips with employees who do not regularly and customarily receive tips. Therefore, "an employer loses its entitlement to the tip credit where it required tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." "When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as part of his employment."

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 131 (S.D.N.Y. 2014) (internal citations and quotations omitted).

84. Defendants unlawfully allowed managers to "keep" portions of the gratuities of Plaintiffs and the FLSA Collective, in violation of 29 U.S.C. § 203(m)(2)(B).

85. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

86. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

87. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

88. Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendant's records.

89. Those similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

90.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and of a class consisting of Waitstaff who have worked at Jongro in the six years and 228 days before the filing of this Complaint (the "Rule 23 Class").

91.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

92.     The Rule 23 Class consists of at least fifty current and/or former employees, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, the names and addresses of each Class Member are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

93.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole. All Rule 23 Class members were subjected to the same corporate practices of Defendants, as alleged herein, of failing to pay all wages due and failing to provide Rule 23 Class members with all required wage notices and wage statements. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

94.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including the following:

    a.  whether Defendants employed Plaintiffs and the Rule 23 Class within the meaning of the NYLL;

    b.  whether Defendants paid Plaintiffs and the Rule 23 Class at the appropriate minimum and overtime wage rates for all hours worked;

    c.  whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146, as alleged herein;

    d.  whether Defendants failed to provide the Rule 23 Class members at the time of hiring or whenever there was a change in their rates of pay with a timely notice stating their rates of pay and the basis thereof, whether paid by the hour or otherwise, and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, in violation of NYLL § 195(1);

    e.  whether Defendants failed to provide accurate wage statements at the end of every pay period to all Rule 23 Class members, in violation of NYLL § 195(3);

    f.  whether Defendants failed to pay Plaintiffs and the Rule 23 Class spread-of-hours pay, in violation of the NYLL;

    g.  whether Defendants improperly misappropriated portions of the gratuities due to Plaintiffs and the Rule 23 Class, in violation of NYLL § 196–d; and

    h.  the nature and extent of class-wide injury and the measure of damages for those injuries.

95.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.

96.     Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants as Waitstaff within the six years prior to the filing of this action.

97.     Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

98.     Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

99.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

100.    Plaintiffs have retained counsel competent and experienced in wage-and-hour litigation and class action litigation.

101.    There is no conflict between any Plaintiff and the Rule 23 Class members.

102.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

103.    The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.

104.    Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

105.    Individual employees lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

106.    In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

107.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(NYLL – Unpaid Minimum Wages)**

108.    Plaintiffs repeat and incorporate all paragraphs above by reference.

109.    Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiffs and the Rule 23 Class.

110.    The NYLL and its supporting regulations require employers to pay employees at least the minimum wage for each hour worked up to forty per workweek.

111.    The minimum wage provisions of Article 19 of the NYLL and the supporting NYDOL Regulations apply to Defendants.

112.    By failing to meet the tip credit notice requirements, Defendants failed to pay Plaintiffs and the Rule 23 Class the minimum wages to which they were entitled under the NYLL.

113.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class minimum hourly wages.

114.    As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**SECOND CLAIM**
**(FLSA – Unpaid Overtime Wages)**

115.    Plaintiffs repeat and incorporate all paragraphs above by reference.

116.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a), and they employ or employed Plaintiffs.

117.    Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times their regular wage rates for hours worked over forty per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

118.    Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

119.    Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

120.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (NYLL – Unpaid Overtime Wages)

121.    Plaintiffs repeat and incorporate all paragraphs above by reference.

122.    Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting NYDOL Regulations and employed Plaintiffs and the Rule 23 Class.

123.    The NYLL and its supporting NYDOL Regulations, such as 12 N.Y.C.R.R. § 146–1.4, required Defendants to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times the regular wage rate for all hours worked in excess of forty per workweek.

124.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the full overtime wages to which they were entitled under the NYLL.

125.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages for all hours worked over forty per workweek and at the full minimum overtime wage rate.

126.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## FOURTH CLAIM
### (FLSA – Misappropriation of Tips)

127.    Plaintiffs repeat and incorporate all paragraphs above by reference.

128.    29 U.S.C. §203(m)(2)(B) prohibits employers from retaining tips received by employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

129.    Defendants willfully violated the FLSA by taking a portion of Plaintiffs' and the FLSA Collective's tips and giving them to managers.

130.    As a result, Plaintiffs and the FLSA Collective have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

**FIFTH CLAIM**
**(NYLL – Misappropriation of Tips)**

131.    Plaintiffs repeat and incorporate all paragraphs above by reference.

132.    NYLL § 196–d and its regulations (*see* 12 N.Y.C.R.R. §§ 146–2.14, –2.15) prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

133.    Defendants willfully violated these provisions by requiring Plaintiffs and Rule 23 Class members to share portions of their gratuities with managers.

134.    As a result of Defendants' willful violation of NYLL § 196-d and NYDOL Regulations, Plaintiffs and Rule 23 Class members suffered damages and are entitled to recover their misappropriated tips, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

**SIXTH CLAIM**
**(NYLL – Spread-of-Hours Pay)**

135.    Plaintiffs repeat and incorporate all paragraphs above by reference.

136.    Defendants willfully failed to pay Plaintiffs and the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked shifts that were longer than ten hours.

137.    By Defendants' failure to pay Plaintiffs and the Waitstaff spread-of-hours pay, Defendants willfully violated NYLL Article 19, § 650 *et seq.* and its supporting NYDOL Regulations, including, but not limited to 12 N.Y.C.R.R. §146–1.6.

138.    Due to the Defendants' willful violations of the NYLL, Plaintiffs and the Waitstaff are entitled to recover their unpaid spread-of-hours pay, pre- and post-judgment interest, liquidated damages, and reasonable attorneys' fees and costs.

## SEVENTH CLAIM
### (NYLL – WTPA, Failure to Provide Notices)

139.    Plaintiffs repeat and incorporate all paragraphs above by reference.

140.    The NYLL and WTPA, as well as the NYDOL's interpretive regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

141.    In violation of NYLL § 195(1), Defendants failed to furnish each Plaintiff and the Rule 23 Class members at the time of hiring and whenever there was a change to rates of pay with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

142.    Upon information and belief, Defendants chose not to provide this information to Plaintiffs and the Rule 23 Class to avoid informing them of their rights

under the NYLL and therefore avoid paying them the proper minimum and overtime wage rates due to them.

143.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants statutory damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### EIGHTH CLAIM
### (NYLL - WTPA, Failure to Provide Wage Statements)

144.    Plaintiffs repeat and incorporate all paragraphs above by reference.

145.    The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

146.    Throughout Plaintiffs' and the Rule 23 Class's employment with Defendants, Defendants paid Plaintiffs and the Rule 23 Class without providing a wage statement at the end of every pay period accurately listing allowances (*e.g.*, tip credits), if any, claimed as part of the minimum wage and all of their hours worked per workweek, especially those over forty, in violation of the NYLL § 195(3).

147.    Upon information and belief, Defendants chose not to provide this information to Plaintiffs and the Rule 23 Class to avoid informing them of their rights under the NYLL, including their correct minimum and overtime wage rates and hours worked, and so avoid paying them at the proper rates due to them.

148.    Due to Defendants' violation of NYLL § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants statutory damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order and judgment:

       a.      certifying the case as a collective action for the violations of the FLSA alleged in the Complaint, designating the named Plaintiffs as the representatives of the FLSA Collective, and designating Plaintiffs' attorneys as counsel for the FLSA Collective;

       b.      certifying the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint, certifying Plaintiffs as class representatives, and designating Plaintiffs' attorneys as class counsel;

       c.      authorizing the issuance of notice at the earliest possible time to all potential FLSA Collective members who worked for Defendants within the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

       d.      declaring that Defendants have violated the overtime wage provisions of the FLSA;

       e.      declaring that Defendants have violated the minimum and overtime wage provisions of the NYLL;

       f.      declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL;

       g.      declaring that Defendants unlawfully misappropriated tips in violation of the FLSA and NYLL;

h.    declaring that Defendants violated the notice, wage statement, and record keeping provisions of the NYLL and WTPA;

i.    declaring that Defendants' violations of the FLSA and NYLL were willful;

j.    enjoining future violations of the FLSA and NYLL by Defendants;

k.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class damages for unpaid overtime wages under the FLSA and NYLL;

l.    awarding Plaintiffs and the Rule 23 Class damages for unpaid minimum wages, spread-of-hours pay, and statutory damages under the NYLL and WTPA;

m.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class damages for unlawfully misappropriated gratuities under the FLSA and NYLL;

n.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

o.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest pursuant to the NYLL;

p.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

q.    awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
          February 14, 2024

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Gianfranco Cuadra
    Christian Mercado
    488 Madison Avenue – 17th Floor
    New York, New York 10022
    Tel: (212) 583–9500
    pechman@pechmanlaw.com
    cuadra@pechmanlaw.com
    mercado@pechmanlaw.com
    *Attorneys for Plaintiffs, the Putative FLSA Collective, and the Putative Rule 23 Class*